De Voss *v.* Johnson.

———— • ○ • ————

## DE VOSS & HANENWINCKEL *vs.* JOHNSON, receiver of the Mutual Safety Insurance Company.

De V. & Co. and other creditors of the M. S. Insurance Company, for the purpose of restoring the solvency of the company and preventing its going into the hands of receivers, made a proposition in writing, to the said company, agreeing with such company, provided it would pay a dividend in cash, on the respective claims of such creditors, that they would release for double the amount of each dividend so paid ; it being understood, however, that if, after the debts were discharged, there should be a surplus arising from the assets of the company, such creditors should receive pro rata their share of such surplus,

De Voss v. Johnson.

to the extent of the balance of their original claims respectively. It was made a condition of this proposition that it should be signed by creditors to the amount of $200,000, at least. It was signed by creditors to the amount of over $250,000, and was then accepted by the company, and a dividend of fifty per cent was declared by the company, on the claims represented by the said creditors, and the sum of $4000 was paid to De V. & Co. upon a claim of $8000 owned by them, arising from a policy. De V. & Co. thereupon executed an instrument, reciting the above proposition, and its acceptance, and that they had been paid fifty per cent upon their claim, by the company; and surrendering and canceling the policy, and *releasing and discharging the company of and from all and every claim and demand growing out of the said policy in any-way.* Provided that if, after payment of the said dividend of fifty per cent and after the payment of expenses, and of *all* the claims on the company, then existing, and which might arise on existing contracts, there should remain any surplus in the hands of the company, the same should be divided among the signers of the proposition, pro rata. *Held*, that the release was executed upon a valid consideration, and was unconditional in its terms and effect; and that until the other creditors of the company, who had not executed any release or discharge of their demands, had been paid and satisfied in full, De V. & Co. were not entitled to any further dividends out of the assets of the company.

*Held also*, that the statement in the release, that it was given for the purpose of restoring the solvency of the company and preventing its going into the hands of receivers, was stated merely by way of recital, as a motive then operating on the minds of the parties; not as an essential element or condition of the validity of the act; and that whether it had the effect intended or not, was immaterial.

MOTION to set aside a report of referees. On the 22d of July, 1848, De Voss & Hanenwinckel effected an insurance with the Mutual Safety Insurance Company, upon the ship Burgundy, to the amount of $8000. The ship was lost, by one of the perils insured against. In May, 1849, the company discontinued the business of insurance; and in October, 1850, it was dissolved and a receiver appointed. On the 10th of July, 1849, the company admitted and adjusted the claim of the insured, under such policy, at $8000. On the 23d of June, 1851, the claim of the insured was, by an order of the supreme court, referred, under the title of the revised statutes relating to "the voluntary dissolution of corporations," to Greene C. Bronson, Samuel J. Beals and Abial A. Low, as referees, to determine the matter in controversy, and to report thereon to the court. On the hearing before the referees the above facts were admitted by the receiver

of the company. It was proved that in June, 1849, the following paper, signed by various persons having claims against the company to the amount of about $250,000, was submitted to the board of trustees, viz:

"To the trustees of the Mutual Safety Insurance Company. We, the undersigned, creditors of the Mutual Safety Insurance Company, for the purpose of restoring the solvency of the company and preventing its going into the hands of receivers, agree with the said Mutual Safety Insurance Company, provided the said company will pay us a dividend in cash on our respective claims, that we will release for double the amount of each dividend so paid ; it being understood, however, expressly, that after the debts now due, or which may hereafter arise on the existing contracts of the company are discharged, should there be a surplus arising from the present existing assets of the company, we shall receive pro rata our share of such surplus to the extent of the balance of our original claims respectively.

This agreement to be signed by creditors to the amount of two hundred thousand dollars, at least ; it is understood that the premium notes of claimants are applicable to dividends on their claims the same as cash.

New-York, June, 1849."

This proposition was accepted by the board of trustees, about the 24th of August, 1849, and the following agreement or release was thereupon executed by the claimants De Voss & Co. "Agreement between the Mutual Safety Insurance Company and E. W. De Voss & Co. Whereas, on or about the — day of June, in the year 1849, a certain proposition was made to the Mutual Safety Insurance Company by various parties, and among others by the above named ——, in the words following : [setting out, at length, the above proposition.]

"And whereas the said proposition was, on or about the 24th day of August, 1849, accepted by the Mutual Safety Insurance Company. And whereas, in conformity to the said proposition, and the said acceptance thereof, a dividend of fifty per cent has been declared by the said company, on the claims represented

De Voss *v.* Johnson.

by the signers to the proposition aforesaid, dated the — day of June, 1849 :

"Now, in consideration of the premises aforesaid and of the sum of four thousand dollars now paid to the above named E. W. De Voss & Co., receipt of which is hereby acknowledged, being fifty per cent on the claim held by them against the said Mutual Safety Insurance Company, growing out of policy No. 26,422, the said claim amounting to the sum of eight thousand dollars, the above named E. W. De Voss & Co. surrender and hereby cancel the said policy, and release and discharge the said Mutual Safety Insurance Company of and from all and every claim and demand whatsoever, growing out of the said policy in any way.

"It is however expressly agreed, in conformity to the said proposition of the — day of June, 1849, and the acceptance thereof as aforesaid, that if, after payment of the said dividend of fifty per cent on the claims represented by the signers to the said proposition, and after the payment of expenses and of all the claims on the said company now existing, and which may hereafter arise on existing contracts, there shall remain any surplus in the hands of the said Mutual Safety Insurance Company, of its present assets and property, the said surplus shall be divided among the signers to the said proposition of the — day of June, 1849, *pro rata*, according to the respective amounts of their original claims.

"Signed and sealed, this fifteenth day of September, 1849. E. W. De Voss & Co., by their attorney, Theodore Victo, [L. s.]"

A counterpart of this instrument was signed by the company, by its president, N. M. Beckwith. It was admitted, that upon executing and delivering this instrument, the company paid to the claimants the sum of $4000 ; and the policy was thereupon surrendered by them to the company. That instruments of like tenor as the above were executed by other creditors, whose admitted claims amounted in the aggregate to $251,843.50, including the claimant's demand ; and each of them received, at the time of delivering such instrument, fifty per cent of the

amount due to them respectively, being in all the sum of $125,921.75.

It was further admitted, that the assets which had come to the hands of the receiver amounted to about the sum of $70,000. That the demands made on said receiver at the time of his appointment, by persons claiming to be creditors of the corporation, other than those who so executed and delivered the aforesaid instrument, amounted to between the sum of $40,000 and $50,000, and that other claims to a large amount, exceeding $35,000, had since been prosecuted by other parties, none of whom ever entered into the aforesaid agreement, or had executed any release, discharge or other instrument.

The counsel for the receiver submitted and insisted, before the referees, upon the following points, and requested them to rule and find accordingly :

I. Parol evidence is not admissible to vary, alter or affect the construction and effect of the agreement and release.

II. By the terms and effect of the instrument dated 15th September, 1849, the claimants, in consideration of the premises therein recited and of the sum of $4,000 then paid by the Mutual Safety Insurance Company to them, did surrender and thereby cancel the said policy of insurance, and released and discharged the company of and from all and every claim and demand growing out of the said policy in any way.

III. It was further by the said instrument expressly agreed, between the claimants and the said company, that they should not be entitled to any part of its present assets or property beyond the aforesaid fifty per cent in cash, until after the payment of all claims on the company then existing, or which might thereafter arise on existing contracts.

IV. There is no averment or proof of any fraud, mistake or accident, to authorize a court to set aside the release.

V. Until the other creditors who have not executed any release or discharge of their demands, or in any manner impaired their right to payment, have been paid and satisfied in full, the claimants are not entitled to any further dividends out of the property and effects of the company.

The counsel for the claimants submitted and insisted, before the referees, upon the following points:

I. The instrument termed a release did not absolutely discharge the demand of the claimants. It was executed and delivered as a part of a plan to prevent the insolvency of the company and to enable it to continue its business, and contemplated the debt as a subsisting debt after the execution of the paper. This plan having been unsuccessful, the consideration upon which the instrument was executed failed, and the claimant ought not to be barred.

II. The creditors who have not executed any such instrument, or come into the arrangement, cannot object, because there is no privity whatever between them and the claimants, and they have no right to intervene. It is a question between the company and the claimants alone.

III. The paper called a release is to be strictly construed. It is not an unqualified discharge of the company, nor a release of the debt. It was an agreement between the company and the claimants, to enable the former to continue its business; and that object having failed, the debt remains still in existence, and entitled to payment *pro rata.*

Two of the referees, viz. Samuel J. Beals and Abiel A. Low, Greene C. Bronson dissenting, overruled the points submitted and insisted upon by the receiver, and refused to rule and find according thereto, and did make and sign a report, by which they found and determined that the funds in the hands of the receiver should be distributed in the same way as they would be if the plaintiffs had not executed the release.

*M. S. Bidwell,* for the receiver.

*D. Lord* and *B. D. Silliman,* for the claimants.

CLERKE, J. I am at a loss to conceive in what respect this differs from any other release, to entitle the plaintiffs to have it set aside " so that the funds in the hands of the receiver should be distrib-

uted in the same way as if the plaintiffs had not executed the release." Is fraud pretended? Not at all; it is expressly disavowed. Was there no consideration? The plaintiffs received an immediate payment of fifty per cent ($4,000) on their claim, with a stipulation that if, after the payment of fifty per cent on their claims and those of the other creditors who united with them in this release, and after the payment of expenses, and *all* claims on the company then existing, and which might arise on existing contracts, there should remain any surplus in the hands of the company, the surplus should be divided among the creditors who executed the release. This was an ample consideration. It *secured* to the plaintiffs one half of their claim, and put at once into their pockets $4,000, instead of leaving them in a state of uncertainty as to what proportion of the demand they should receive, if any, and of waiting for the final settlement of the complicated affairs of an insurance company, pronounced to be insolvent, liable to be dissolved, and whose estate and assets would therefore soon probably be placed in the hands of a receiver.

Were not the conditions of the agreement in all respects complied with? The $4,000 were at once paid; and, as required, instruments of a similar tenor were executed by other creditors, to the amount of over two hundred thousand dollars, indeed amounting to over two hundred and fifty thousand dollars, including De Voss & Company's demand, each 'of them receiving, at the time of delivering such instrument, fifty per cent on the amount due to them respectively.

To be sure, it is mentioned in the release that it is given for the purpose of restoring the solvency of the company, and preventing its going into the hands of receivers. But this is stated by way of recital, as a motive then operating on the minds of the parties to perform the act; not as an essential element or condition of the validity of the act. The release did not, indeed, save the company from insolvency, or from going into the hands of a receiver; but are we to pronounce the instrument void on that account, when nothing appears on the face of it, to show

that, if such did happen, contrary to the motives or wishes thus incidentally expressed, the release was to be of no effect? If the claimants meant this, they should have said so; and not having said so, it is fairly to be presumed that they meant no such thing. They have lost nothing by the company's failure to resume business; and, as mere creditors, would have gained nothing if they had resumed it.

When releases are limited by courts to the purpose and occasion on which they are made, such purpose and occasion constitute a condition of the ultimate efficacy and validity of the instrument; and this condition is either plainly expressed, or so manifestly forms an integral and operative part of it, that it cannot be rejected. The release is here in itself unconditional, notwithstanding the incidental expression of the motive, and bears a resemblance to the case of *Pratt* v. *Crocker*, (16 *John.* 270,) where a release was given by a defendant in a cause, *for the purpose* of enabling the releasee to be a witness on the trial: it was held a discharge of the liability of the witness to the defendant, although he was not sworn at the trial, nor the release produced.

The report should be set aside; costs to abide the event.

MITCHELL, P. J. In addition to what has been said by Judge Clerke, it may be observed, that before the release was executed, the plaintiff and others made application to the company to pay this per centage, and that those who joined in the application should then execute releases, so as to allow non-concurring creditors to be paid in full, and the applicants to have a claim only on the surplus which should then remain, and that this was done in order to make the company solvent. If a sufficient number joined in this application, so as to enable the company to pay that per centage to them and to pay all other claims in full, then the company, on receiving these releases, became solvent in fact, and could pay the per centage to the applicants without infringing the law forbidding insolvent companies to give

a preference. And a sufficient number did so join. If this were not the meaning of the release, but the claims of the applicants were still to be debts due by the company, for the whole amount or for an equal portion with the non-concurring creditors, then the objects of the applicants would be defeated, the company would be insolvent in fact, and no payment could be made to them, and the payments since actually made to them have been made against law, and could not be recovered from the applicants. This system of releasing the debts of companies and taking a per centage and establishing a *new claim* only as to the unpaid part of the debt, on the surplus funds merely of the company, after payment of all other claims, was not new. It was resorted to after one if not both of the great fires in this city. It is wise and beneficial to all parties. It enables the consenting creditor to be immediately placed in funds, and the company to wind up its affairs, so far as those creditors are concerned, without the expense and delay of a receivership. It can hardly be doubted that the amount paid to the plaintiffs some five or six years ago has been more beneficial to them than it would have been for them to have waited to this day, and then to have received their ratable proportion of the whole assets. Contracts when fairly made (as this was) should be honestly carried out. And if a merchant, for the advantage of cash in hand, consents to give their full pay to creditors who choose to wait, he should, after receiving the benefit, allow the other party to receive the benefit which by agreement (or if it be not an agreement because the other party was no formal party to it, then the benefit which by his consent) the other party was to have who chose to run the risk of delay and of all its consequences. The solvency which the agreement was intended to effect was accomplished by the understanding of the agreement above given : it was a then present solvency, such as should authorize the payment to the concurring creditors of their per centage ; not a certainty that they would be solvent a year afterwards. The court would have sustained the payments made to those creditors if they had been sued to refund, and it should equally sustain the

rest of the agreement, which was essential in order to make those payments valid.

The report of the referees should be set aside, with costs to abide the event.

ROOSEVELT, J., concurred.

Report set aside.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke* Justices.]